```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/06/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSE MARIA ALVES DECASTRO and DJJ
MINING & SERVICES (PRIVATE) LIMITED          Index No.: 12-CV-1386(AT)(DF)

        Plaintiffs,

-against-

DEEPAK KAVADIA and NICE GEMS, INC.

        Defendants.
-----------------------------------------------------------------X

# JOINT PRETRIAL STATEMENT

I.    The Full Caption of the action is set forth above.

II.   Trial Counsel

    **For Plaintiffs**

    Matthew J. Harris
    57 Montgomery Place
    Brooklyn, New York 11215
    P.  718. 622. 4104

    **For Defendants**

    Andrew Lavoott Bluestone
    233 Broadway, Suite 2702
    New York, NY 10279
    P.  212.791.5600
    F.  212.513.7206

III.  Plaintiff's Statement on Subject Matter Jurisdiction

    This Court has subject matter jurisdiction over all claims in this action pursuant to 28 U.S.C. section 1322 based upon complete diversity of the parties.

    Plaintiff, Jose Maria Alves DeCastro, is an individual residing at Rua Direita de Luanda, No. 151-157, Luanda, Angola.

Plaintiff, DJJ Mining & Services (Private) Limited, is a company duly formed in accordance with the laws of the Country of Angola, with its principal place of business located at Rua Direita de Luanda, No. 151-157, Luanda, Angola.

Defendant, Deepak Kavadia is an individual residing at 18 Reiner Place, Englewood Cliffs, New Jersey 07632.

Defendant, Nice Gems, Inc. is a corporation duly organized and existing pursuant to the laws of the State of New York, with its principal place of business located at 55 West 47th Street, New York, NY 10036.

The amount in controversy exceeds $75,000.00. See 28 U.S.C. Section 1332(a).

IV. Claims and Defenses To Be Tried

(1) Plaintiffs' Claims and Defenses to Counterclaims to be Tried

PLAINTIFF'S CLAIMS

Two of the Plaintiffs' original claims remain to be tried.

In their first claim, Plaintiffs assert they have a contractual right to the 1,600 carat parcel of diamonds referred to in the Complaint. Plaintiffs claim that they delivered the 1,600 carat parcel of diamonds to Defendants as part of a written contract, and that Defendants must either return the parcel or pay its fair market value in cash to Plaintiffs. Defendants claim they never received the 1,600 carat parcel.

In their second claim, Plaintiffs assert they are the rightful owners of the 14 rare, colored diamonds referred to in the Complaint that are now being held under they Court supervision by Dunbar Global Logistics. Defendants claim that the diamonds are collateral for a $380,000 debt they say Plaintiffs owe them. Plaintiffs admit they had owed $380,000 to Defendants but claim that repaid that money to Defendants. Therefore, Defendant Kavadia's claim that he was given the

14 diamonds by DeCastro as payment for the $380,000 debt must fail, and Plaintiffs should be declared the rightful owner of the 14 diamonds.

The rightful ownership of the 14 diamonds is not a question for the jury to consider. It is dependent upon the jury's answer to whether DeCastro refunded the $380,000 advance to Kavadia. Kavadia asserts in his counterclaim that he never received the $380,000. If the jury decides that DeCastro returned the $380,000 to Kavadia, then 14 diamonds belong to DeCastro. If the jury determines that DeCastro did not return the $380,000 to Kavadia, then $380,000 worth of the 14 diamonds should be sold and the cash given to Kavadia, with the remaining diamonds going to DeCastro, or, in the alternative, DeCastro should pay $380,000 to Kavadia.

The Complaint also seeks injunctive relief as to both the 1,600 carat parcel of diamonds and the 14 rare diamonds, asking for a permanent injunction enjoining the illegal possession of the diamonds and from selling, transferring, or in any way encumbering them and requesting that the diamonds be turned over to the Court during the pendency of the action. In light of the Court's order placing the 14 diamonds and the 1,600 carat parcel of diamonds under its supervision (Dkt 19), these requests for injunctive relief are now moot. The 14 rare diamonds are with Dunbar Global Logistics, and Kavadia asserts that he never took possession of the 1,600 carat parcel of diamonds.

PLAINTIFF'S DEFENSES TO COUNTERCLAIMS

Plaintiffs defend against Defendants' two remaining counterclaims: 1.) Defendants' seventh counter-claim, sounding in breach of contract, alleging that DeCastro never repaid Kavadia the $380,000 Kavadia had invested with DeCastro in a deal for diamonds that did not go forward; and 2.) Defendants' second counter claim, that DeCastro committed libel per se.

3

Plaintiffs' defense to Defendant's counter-claim that they are owed $380,000 by Plaintiffs is that the $380,000 was refunded to Defendants.

Defendants' libel per se claims are based upon an email and a letter. Plaintiffs claim that the facts in the email are true. Plaintiffs claim they had no involvement with the letter but, in any event, the statements in the letter are also true.

## CLAIMS ADJUDICATED BY THE COURT

Judge Torres' September 30 Decision granted Plaintiffs' request for summary judgment on the following counter-claims by Defendants: First Counterclaim, Intentional Infliction of Emotional Distress; Third Counterclaim, Assault; Fourth Counterclaim, False Arrest; Fifth Counterclaim, Malicious Prosecution; Sixth Counterclaim. Prima Facie Tort; Eighth Counterclaim, Conversion; Ninth Counterclaim, Fraud; Tenth Counterclaim, Promissory Estoppel; Eleventh Counterclaim, Quantum Meruit; Twelfth Counterclaim, Misrepresentation/Negligent Misrepresentation; Thirteenth Counterclaim, Unjust Enrichment.

Judge Torres' September 30 Decision also granted Defendants' request for Summary Judgment on the following causes of action as being duplicative of Plaintiffs two claims described above: Fifth Cause of Action, for Conversion as to the 1,600 carat parcel of diamonds; Sixth Cause of Action, for Conversion as to the 14 diamonds; Seventh Cause of Action, for Unjust Enrichment as to the 1,600 carat parcel of diamonds; Eighth Cause of Action, for Unjust Enrichment as to the 14 diamonds.

(2)     Defendants' Defenses and Counterclaims to be Tried

DEFENDANTS' DEFENSES

(A)     Accord and Satisfaction—Agreement between the parties that a stipulated performance would be accepted in lieu of an existing agreement. *See, Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375, 383-85 (1993).  Defendants never received the first parcel of diamonds, and were not obliged to pay for diamonds not received.  Defendants paid a sum of money to Defendants for a second parcel of diamonds which were not delivered and the $ 380,000 was never returned.  Plaintiff brought the 14 diamonds to Defendants as a form of partial re-payment of the $ 380,000.  The 14 diamonds should now come into the possession of Defendants.

(B)     Statute of Fraud—Bars the enforcements of an oral contract for more than $500 which cannot be performed within one year. *See,* General Obligations Law § 5-701(a); s*ee, D & N Boening, Inc. v Kirsch Beverages, Inc.*, 63 NY2d 449 (1984); *see also,* NY UCC § 2-201 and N.Y. UCC Part 2 § 1-206; and CPLR §3018(b).

(C)     ~~Illegality-As a general rule, illegal contracts are unenforceable. W.W. Ross Corp. v. Betar, 91 AD3d 92, 99 (2d Dep't 2011). Plaintiff imported diamonds illegally, and without any customs declarations or filings.~~

(D)     Defendants Performance—Defendants made payments to Plaintiffs performing pursuant to the MOU.

(E)     Defendants assert all applicable contract defenses, including, but not limited to, estoppel, release, fraud and unclean hands.

(F)     The $ 380,000 was not returned to Defendants.

5

DEFENDANTS' COUNTER-CLAIMS

**First Remaining Counter-Claim—Defamation Per Se.**

"Defamation is injury to a person's reputation, either by written expression (libel) or oral expression (slander)." *Lesesne v Brimecome*, 918 F Supp 2d 221 (SDNY 2013).

~~(A)   Slander Per Se – On September 19, 2011 Plaintiff sent an unknown female to Defendants' place of business threatening undefined harm and making false and malicious accusations which resulted in criminal charges (later dismissed) being brought against Defendant Kavadia's 62 year old father, Samudra Kavadia, who worked for the Defendants' business. The law presumes that damages will result from statements which tend to injure another in his or her trade, business or profession. See, Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir 2001); O'Diah v Oasis, 954 F Supp 2d 261, 275 (SDNY 2013); and Liberman v Gelstein, 80 NY2d 429, 435 (1992).~~

(B)   Libel Per Se—On August 16, 2011, Plaintiff DeCastro sent a highly defamatory email to a large number of New York-based Indian jewel venders, accusing the Defendants, among other things, of fraudulent business practices. On November 11, 2011, DeCastro published a highly defamatory "open letter" falsely alleging, among other things, criminal conduct on the part of Deepak Kavadia. The email and "open letter" were both susceptible of but one meaning and are of such a nature that the Court can presume as a matter of law that they tend to have disgraced the Defendants. *See, Carotek, Inc. v Kobayashi Ventures*, LLC, 875 F Supp 2d 313, 344 (SDNY 2012).

**Second Remaining Counter-Claim—Breach of Contract**.

Plaintiffs failed to perform any of their obligations in accordance with the MOU as Plaintiffs failed to deliver any of the diamonds which constituted the subject matter of the MOU. Conversely, Defendants substantially performed their obligations under the MOU when Defendants wired Plaintiff DeCastro and/or his agents/employees, $384,000.00 for the diamonds which Plaintiffs

6

failed to deliver. There was a valid contract between the parties, the Defendants performed pursuant to the contract by wiring the Plaintiff DeCastro and/or his agent money, and the Plaintiffs breached by failing to deliver any of the diamonds pursuant to the agreement. *See, (El-Nahal v FA Mgt., Inc.*, 126 AD3d 667, 668 (2nd Dept 2015) (*citing Dee v Rakower*, 112 AD3d 204, 208-209, 976 NYS2d 470 (2013); *Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc.*, 84 AD3d 122, 127, 921 NYS2d 329 (2011)).

## COUNTERCLAIMS ALREADY ADJUDICATED BY THE COURT

1. Intentional Infliction of Emotional Distress—Defendants asserted that Plaintiffs acted with intent to cause and/or in brazen disregard of a substantial probability of causing severe emotional distress to the Defendants, their officers, agents, servants and/or employees. Plaintiffs instituted an outrageous campaign of harassment aimed at intimidating, threatening, defaming, and otherwise terrorizing the Defendants.

2. Assault—Defendants asserted that due to Plaintiff DeCastro breaking through the security door at Defendants place of business and threatening to kill everyone inside, Defendants, their officers, agents, servants and/or employees in deadly fear for their safety as Defendants had good cause to believe their lives were in jeopardy.

3. False Arrest/Imprisonment—Defendant asserted that by sending the unknown female to falsely report to New York City police officers that Samudra Kavadia, Defendant Kavadia's father, engaged in larcenous conduct, Plaintiffs took an active role in the arrest, encouraging and/or importuning police to act, such that the Samudra Kavadia would be arrested and confined. Plaintiffs' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of the Defendants.

4. Malicious Prosecution—See False Arrest/Imprisonment claim.

5. Prima Facie Tort—Defendants asserted that the Plaintiffs, their officers, agents, servants and/or employees could have foreseen that their conduct and actions, without cause or justification, would necessarily cause physical and mental pain and injury to the Defendants, so as to constitute an intentional desire.

6. Conversion—Defendant asserted that because Plaintiffs received Defendants funds for the 11,000 carat parcel of diamonds and did not deliver the diamonds nor return the funds, Plaintiffs had converted Defendants funds.

7. Fraud—Defendants asserted Plaintiffs made material misrepresentations to the Defendants including, among other things, representations concerning the delivery of diamonds relative to an agreement entered into by the parties on or about April 15, 2011, upon which Plaintiffs should have known that Defendants would rely.

8. Promissory Estoppel—Defendants asserted that Plaintiffs made representations and promises which Plaintiffs failed to keep, as a result of Plaintiffs failure perform pursuant to the agreement Defendants were substantially injured.

9. Quantum Meruit—Defendants invested substantial funds into the business of the Plaintiffs with the reasonable expectation that they would receive a benefit from their investment. Plaintiffs accepted Defendants' investment funds and received the benefit of use of these funds. Plaintiffs have failed and refused to reimburse Defendants for the reasonable value of their investment.

10. Misrepresentation/Negligent Misrepresentation—Plaintiffs represented to Defendants that they would procure some $2,300,000.00 contingent upon the Defendants' investment of $400,000.00, which in turn would be sold, and the Defendants would receive a

specific benefit from its investment. It is Defendants belief that Plaintiffs knew or should have known that these representations were false when made.

11.   Unjust Enrichment—Defendants asserted that Plaintiffs unjustly benefit from the funds which Defendants tendered as advancement payment of the 11,000 carat parcel of diamonds which Plaintiffs never delivered.

V.   **Jury Trial**

This is a jury trial which is matter is expected to last five (5) days.

VI.   **Joint Statement**

The parties' claims involve at least two agreements regarding three sets of diamonds. On April 15, 2011, the parties executed a Memorandum of Understanding (the "MOU") describing the terms of their agreements under paragraph entitled "Business 1" and "Business 2"

Under Business 1, Plaintiffs would provide a parcel 1,600 carats of rough diamonds to Defendants to sell to third parties, and the two principals would share equally in the profits from the sale above a reserve price of $600,000. Plaintiffs allege that they delivered the 1,666-carat parcel to Defendants, but that Defendants failed to find a purchaser for it and refused to return the diamonds to Plaintiffs. Plaintiffs, alleging breach of contract, have sued for the return of the 1,600-carat parcel or a payment in cash equal to the fair market value of the diamonds. Defendants deny that they ever received the 1,600-carat parcel.

Instead, Defendants counterclaimed, based upon Business 2 of the MOU. Pursuant to Business 2, Defendants would pay $400,000 for the right to select $400,000 worth of diamonds plus one exclusive stone of at least 10 carats from an 11,000 carat parcel of rough diamonds Plaintiffs were expecting to receive in the near future. Defendants wired $300,000 to DeCastro's

9

agent and gave DeCastro $80,000 in cash. DeCastro acknowledges receipt of the $ 380,000 with the understanding that the remaining $20,000 would be paid at a later date. Plaintiffs admit they received the $380,000 payments and that they never delivered the diamonds from the 11,000-carat parcel.

However, Plaintiffs claim that in July 2011 they allegedly returned the $380,000 to Defendants in two wire transfers, one for $200,000 and one for $180,000, to a bank account held by Pratik Diamonds, a company plaintiffs argue was affiliated with Kavadia. Defendants denies that Plaintiffs returned the funds to them, denies that money was given to Pratik on behalf of Defendants, and denies receipt of moneys by either Pratik or defendants.

In addition, the parties dispute the ownership of a collection of fourteen rough, colored diamonds. The parties agree that the 14 diamonds belonged originally to Plaintiff DeCastro. Plaintiffs gave the 14 diamonds to Defendant in June 2011. There is no written agreement regarding the 14 diamonds. Kavadia did, however, sign a receipt dated June 20, 2011 describing the 14 diamonds and confirming that he had received them from DeCastro. Plaintiffs alleged that the collection of diamonds was provided to Defendants in an agreement, unrelated to the MOU, wherein Defendants would only supervise the cutting and polishing of the diamonds, have them certified and appraised by the Gemological Institute of America, and then return them to Plaintiffs. It is Defendants position that the collection of 14 diamonds were given to them in partial satisfaction of the $380,000 which Defendants assert is owed to them pursuant to Plaintiffs' obligation pursuant to Business 2 of the MOU. Plaintiffs, however, claim that they repaid the $380,000.

The Court will determine the disposition of the 14 diamonds whether or not DeCastro returned the $380,000 which Kavadia had advanced to DeCastro pursuant to Business 2 of the MOU.

Defendants have brought a counterclaim of defamation per se against Plaintiffs. As part of their defamation per se claim, Defendants assert that Plaintiffs committed libel per se based upon an email which Plaintiff DeCastro sent and an open letter, which Defendants believe that Plaintiffs sent as well as by oral statements made to third-parties which tended to demean Defendatns. Plaintiffs contested that they sent the letter.

In August 2011, DeCastro sent an email to a number of New York jewelers accusing Defendants of fraudulent business practices. Defendants assert that they statements in the email were slanderous and Plaintiffs admit the publication but assert that the statements were the truth.

Defendant also assert that Plaintiffs committed slander by having an unidentified woman come to Plaintiffs place of business and make untrue oral statements to third-parties.

VII.   List of People, Places, and Institutions Likely to be Mentioned
   1.   Jose Maria Alves DeCastro
   2.   DJJ-Mining & Services (Private) Limited
   3.   Deepak Kavadia
   4.   Nice Gems Inc.
   5.   Samurda Kavadia
   6.   India
   7.   Angola
   8.   Diamonds

    a. Parcel

    b. Carat

    c. Cut

9. Bank of America

10. Diamond Industry Associations

11. Zimbabwe

12. Memorandum of Understanding

13. Minerals Marketing Corporation of Zimbabwe

14. Pratik Diamonds

15. Zvi Jaakov Naveh

16. Mritynnjay Narayan Padasar (Padsar)

17. Belgium

18. Englewood, N.J.

19. Gemological Institute of America

20. Employee of Bank of America to be named

VIII. **Trial Judge**

The Parties have not consented to trial of the case by a Magistrate Judge.

IV. **Stipulations**

Plaintiffs and Defendants have not entered into any stipulations of fact or law.

X. **Witnesses**

 **PLAINTIFFS**

1. Jose Maria Alves DeCastro ("DeCastro") – Will testify in person and will testify with respect to the entire sequence of events from which the actions arose.

2.      Mrityunjay Narayan Padsar ("Padasar")—will testify in person and will use an interpreter, paid for by Plaintiffs. He will testify that he was present in Luanda, Angola when Defendant Kavadia allegedly accepted delivery of the 1, 600 parcel of diamonds from Plaintiff DeCastro. Padasar will also testify about a meeting at which he was allegedly present in Defendant Kavadia's office at Pratik diamonds in Mumbai, India, when Plaintiff DeCastro allegedly demanded the return of the 1,600 carat parcel and Defendant Kavadia refused.

3.      Zvi Yaakov Naveh ("Naveh")—will testify in person and without an interpreter. He will testify as he was present at Plaintiff DeCastro's home in Luanda, Angola when Defendant Deepak Kavadia allegedly accepted delivery of the 1,600 carat parcel of diamonds from Plaintiff DeCastro.

4.      A Bank of America Employee—will testify in person about the Bank of America Records, produced in response to Plaintiffs' subpoena, which show that $380,000 was deposited in the account of Pratik Diamonds, Defendant Kavadia's company in India.

**DEFENDANTS**

1.      Deepak Kavadia ("Kavadia")—will testify in person and will not need an interpreter. Kavadia will testify with respect to all issues giving raise to the both the Plaintiffs' and Defendants' claims. Specifically, Kavadia will testify with respect to the parties entering the MOU and the subsequent conduct of all the parties.

2.      Representative of a Diamond Industry Association (the "Representative")—will testify in person and will not need an interpreter. The Representative will testify with respect to customs requirements and applicable law for importing diamonds into the United States.

13

XI.  **Depositions to be Used**

PLAINTIFFS

Plaintiffs will use testimony from the Deposition of Deepak Kavadia dated April 9, 2013: 19:21-20:8; 221:9-22:10.

DEFENDANTS

Defendant will offer testimony from the Deposition of Plaintiffs, Decastro and DJJ-Mining & Services dated September 18, 2012, pages 29,35,57,68,101-102,106,136-141

XII.  **Exhibits**

PLAINTIFFS  - Plaintiffs' revised exhibit list at Docket No. 268 is incorporated herein by reference.

1. Memorandum of Understanding between DeCastro and Kavadia dated April 15, 2011

2. Invoice from Minerals Marketing Corporation of Zimbabwe for the 1,600 karat parcel of diamonds.

3. Invoice from Minerals Marketing Corporation of Zimbabwe for the 1,000 karat parcel of diamonds

4. May 9, 2011 email at 18:18:07+0400 From Deepak Kavadia to Gade Elbahas

5. May 9, 2011 email at 4:26 pm from Gade Elbas to Deepak Kavadia

6. May 10, 2011 email from Deepak Kavadia to Jose DeCastro

7. Subpoena directed to Bank of America dated July 12, 2012

8. Documents included in Response by Bank of America to subpoena dated July 12, 2012

9. August 6, 2011 email from Jose DeCastro to Martin Kirschenbaum

10XXXXAugustX14,X2011XemailXfromXJoseXDeCastroXtoXDeepakXKavadia

XXXXXChaseXBankXsXnoticeXthatXaXcheckXforX$90,000XwrittenXtoXDeCastroXbyXKavadia

bouncedX

DEFENDANTS

    A.      Memorandum of Understanding (Plaintiff's 1);

    B.      Martin Kirschenbaum Inc., invoice dated 10/19/2011;

    C.      Emails by Plaintiff to Deepak Kavadia, dated August 14, 2011;

    D.      Email by Plaintiff dated August 9, 2011 to the Attention of the Association of the Indian Community;

    E.      Republic of Zimbabwe Kimberly Process Certificate ZW 000145;

    F.      MMCZ Minerals Marketing Corporation of Zimbabwe Invoice No. PD013/02/11

    F.      Exchange Control Act Application to Export Goods from Zimbabwe, 0000474046;

    G.      "Important Open letter to Deepak Kavadia and the Citizens of Englewood Cliffs"

    H.      "Englewood Cliffs Police Department" "Complaint Against: Deepak Kavadia and Family, dated August 16, 2011;

IXXXXXCriminalXCourtXofXtheXCityXofXNewXYorkXfelonyXcomplaintXagainstXSamudraXKavadiaX dated9/19/2011; XXXXXXXXXX

    J.      Email version of Exhibit H;

XIII. **Relief Sought**

PLAINTIFFS

As to the Breach of Contract and wrongful failure by Defendants to return to Plaintiffs the 14 rare diamonds, Plaintiffs seek a finding by the Court that Plaintiffs are the rightful owners of the 14 diamonds and an order by the Court directing that the diamonds be released by Dunbar

Global Logistics to Plaintiffs. Plaintiffs also seek the reimbursement by Defendants of the expenses Plaintiffs incurred in connection with storage of the diamonds by Dunbar Global Logistics, and attorneys' fees.

As to the wrongful failure of Defendants to return to Plaintiffs the 1,600 carat parcel of diamonds, Plaintiffs seek money damages in the amount of $600,000.00, plus pre-judgment interest, and attorneys' fees.

As is stated in the Invoice from Materials Marketing Corporation of Zimbabwe (Plaintiffs exhibit 3), Plaintiffs purchased the 1,600 carat parcel of diamonds for $462,770.00. As is articulated in the Memo of Understanding between Plaintiff DeCastro and Defendant Kavadia (Plaintiffs exhibit 1), Plaintiffs furnished the 1,600 carat parcel of diamonds to Defendant Kavadia with the understanding that Defendant Kavadia would sell them for no less than the reserve price of reserve price of $600,000, the parties splitting any amount received over $600,000. Each of the parties having over 20 years experience in the diamond trade, $600,000 is an accurate estimate of the minimum wholesale value of the 1,600 carat parcel of diamonds.

DEFENDANTS

For their defamation per se claims defendant seek compensatory and punitive damages in an amount to be determined by a properly charged jury. As to their breach of contract claim the Defendants seek a return of the $384,000 plus interest from the date of payment by Defendant to Plaintiff which was paid to the Plaintiffs for the 11,000 carat parcel of diamonds which were never delivered.  Defendant also seeks an award of the 14 diamonds. Defendants also request any other damages which the Court or the jury may deem necessary.

XIV.   Less Than Unanimous Verdict.

Parties do not consent to a less than unanimous verdict.

IT IS ORDERED that the Court may, in order to prevent manifest injustice or for good cause shown, at the trial of the action or prior thereto, upon application of counsel for any party made in good faith, or upon the Court's own motion, modify this Joint Pretrial Order to the extent that the Court may deem such modification to be just and proper.

Dated: New York, New York
  March 6      , 2̶0̶1̶6̶X̶X̶X̶X̶ 2017

SO ORDERED:

_____
Jesse M. Furman
United States District Judge