UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JOSE MARIA ALVES DECASTRO et al.,                    :
:
Plaintiffs,                           :
:                    12-CV-1386 (JMF)
-v-                                   :
:                    MEMORANDUM OPINION
DEEPAK KAVADIA et al.,                               :                    AND ORDER
:
Defendants.                           :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

By Opinion and Order entered on October 3, 2018, this Court granted a motion by Matthew Harris, Esq., former counsel to Plaintiffs Jose Maria Alves DeCastro and DJJ-Mining & Services (Private) Limited ("DJJ-Mining"), to enforce an attorney's charging lien against DeCastro pursuant to Section 475 of the New York Judiciary Law. *See DeCastro v. Kavadia*, No. 12-CV-1386 (JMF), 2018 WL 4771528, at *1 (S.D.N.Y. Oct. 3, 2018) (Docket No. 432). The Court reserved judgment on the amount of the lien, however, and directed Harris to make a supplemental submission "detailing the amount to which he is entitled based on the fair and reasonable value of his services," with accompanying "documentation of his work on this case prior to, and throughout, the trial, including descriptions of the work performed and the time expended." *Id.* at *8. Harris filed an affirmation with supporting documentation on October 17, 2018. (Docket No. 433 ("Harris Aff.")). Nonparty Gideon Finkelstein, who holds a judgment against DJJ-Mining, filed a response on October 27, 2018. (Docket No. 434 ("Opp'n")).

As this Court noted in its prior Opinion, "a charging lien 'should be fixed at the . . . fair and reasonable value of the services rendered, determined at the time of the discharge and

computed on the basis of *quantum meruit*.'" 2018 WL 4771528, at *3 (quoting *Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12-CV-7424 (JMF), 2013 WL 371673, at *2 (S.D.N.Y. Jan. 29, 2013)). In *Winkfield*, the Court summarized the requisite analysis as follows:

> [I]n assessing the amount of a charging lien on a *quantum meruit* basis, a court should consider (1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained (to the extent known). After considering the factors relevant to a *quantum meruit* fee analysis, it is appropriate for the court to turn to lodestar analysis to reach a specific dollar figure for the value of the services rendered. The determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court, and the Second Circuit has instructed that a charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be fair.

*Winkfield*, 2013 WL 371673, at *2 (internal quotation marks, citations, and alterations omitted).

Conducting that analysis here, the Court finds that Harris's request — for $90,000 in fees and costs — is fair and reasonable. Among other things, although the dispute at the heart of the case was not particularly complex, Defendants' conduct made litigation of the case much more difficult and extensive, as Harris was forced to move — successfully — for sanctions and had to retain a bankruptcy lawyer following trial. Moreover, preparations for trial and trial itself were complicated by the fact that DeCastro was located abroad and the fact that he and the other two witnesses called by Harris at trial spoke only limited English. Finally, the results obtained by Harris speak for themselves: The jury returned a verdict in DeCastro's favor, giving him the right (subject to Finkelstein's claims, of course) to fourteen allegedly valuable uncut diamonds. (As it turns out, those fourteen diamonds were far less valuable than believed (*see* Docket Nos. 402, 430), but that is neither here nor there for present purposes.) The fairness and reasonableness of the amount sought is reinforced by Harris's time sheets, which — although reconstructed *ex post* — conservatively reflect that he worked almost 350 hours on the case. (Harris Aff. Ex. 1).

2

The Court has considered all of Finkelstein's arguments in opposition to Harris's request and finds that they are without merit. To a large extent, Finkelstein merely seeks to relitigate an issue that he already argued and lost — namely, that his interest should take precedence over Harris's charging lien. *See DeCastro*, 2018 WL 4771528, at *5-7. Finkelstein did not timely move for reconsideration, however, and he may not do so now. *See, e.g.*, S.D.N.Y. Local Civ. R. 6.3; *Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, No. 12-CV-7581 (JGK), 2015 WL 6454844, at *2 (S.D.N.Y. Oct. 26, 2015), *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, 654 F. App'x 507 (2d Cir. 2016). And in any event, he provides no valid basis for reconsideration. *See, e.g.*, *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (noting that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks and alteration omitted)).

Beyond that, Finkelstein's primary argument is that Harris's request is excessive because he had agreed to represent Plaintiffs for only $75,000. (*See* Opp'n 6). But that is not entirely accurate, as Plaintiffs also agreed to pay Harris $100,000 in the event that he secured the rights to the fourteen diamonds. (Harris Aff. 1). Granted, that amount was contingent, but it does have to be factored into the value of the contract to Harris when he agreed to take the case. More fundamentally, as the Court noted in its prior Opinion, it is *quantum meruit*, "not the terms of Harris's retainer agreement with DeCastro," that "govern[s]." *DeCastro*, 2018 WL 4771528, at *7; *see also Kovach v. City Univ. of N.Y.*, No. 13-CV-7198 (LGS), 2015 WL 3540798, at *4 (S.D.N.Y. June 4, 2015) ("The theory of *quantum meruit*, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien." (internal quotation marks omitted)).

3

For the foregoing reasons, the Court finds that $90,000 is a fair and reasonable amount to award Harris for his services rendered in this case. Because Plaintiffs already paid Harris $50,000, however, the Court fixes the amount of Harris's lien at $40,000. (Harris Aff. 1). Once that amount is disbursed to Harris, a substantial portion of the proceeds from the sale of the diamonds (approximately $60,000) will still remain on deposit with the Court. It is therefore ORDERED that all parties (including Finkelstein) who claim an interest in the proceeds on deposit appear for a conference before the Court on **December 19, 2018 at 3:30 p.m.** in Courtroom 1105 of the Thurgood Marshall U.S. Courthouse, 40 Centre Street, New York New York, to discuss the appropriate next steps to be taken regarding the remaining funds. The parties are directed to confer prior to the conference and, thereafter, to submit a joint letter addressing that topic and whether there is anything the Court can do to facilitate a settlement of any remaining claims to the proceeds no later than **December 13, 2018.**

The Clerk of Court is directed to disburse $40,000 from the amount held in the Court's registry to Mr. Harris.

SO ORDERED.

Date: November 28, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge